UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DORIS JEAN GRADY,

               Plaintiff,                           Civil Action No. 12-13349

       v.                                    District Judge Stephen J. Murphy, III
                                             Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

**REPORT AND RECOMMENDATION TO
DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [12] AND
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [17]**

      Plaintiff Doris Jean Grady appeals Defendant Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits and supplemental security income. (*See* Dkt. 1, Compl.) Before the Court for a report and recommendation (Dkt. 3) are the parties' cross-motions for summary judgment. (Dkts. 12, 17.) For the reasons set forth below, this Court finds that substantial evidence supports the ALJ's decision. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 12) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 17) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## I. BACKGROUND

Plaintiff was 44 years old when she allegedly became disabled. (Tr. 84.)  She previously worked as a cook and  hostess.  Plaintiff alleges that she cannot work because of several impairments including morbid obesity, degenerative joint disease of the left knee, joint disease of the left thumb, hypertension, bronchial asthma/chronic obstructive pulmonary disease, bilateral carpal tunnel syndrome, chronic low back and hip pain with degenerative disc disease, bilateral plantar fascitis and heel spurs, osteoarthritis of the left shoulder, a latex allergy, and anxiety with fatigue and memory problems.

### A.  Procedural History

On June 25, 2008, Plaintiff applied for disability insurance benefits.  (Tr. 24.)  On July 8, 2008, Plaintiff applied for supplemental security income.  (*Id*.)  In both applications Plaintiff asserted that she became unable to work on December 29, 2007.  (*Id*.)  The Commissioner initially denied Plaintiff's applications on September 3, 2008.  (Tr. 84-85.)  Plaintiff then requested an administrative hearing, and on December 3, 2010, she appeared via video conference with counsel before Administrative Law Judge Joseph P. Donovan, Sr., who considered her case *de novo*.  (Tr. 21-37.) In a January 4, 2011 decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  (*See* Tr. 32-33.)  The ALJ's decision became the final decision of the Commissioner on June 6, 2012, when the Social Security Administration's Appeals Council denied Plaintiff's request for review.  (Tr. 1-7.)  Plaintiff filed this suit on July 31, 2012.  (Dkt. 1, Compl.)

### B.  Testimony at the Hearing Before the ALJ

#### 1.  *Plaintiff's Testimony*

2

Plaintiff's attorney indicated that he did not believe that Plaintiff had any one impairment that met the criteria of a listing, however, the combination of her impairments prevented her from working full-time.  (Tr. 44.)

Plaintiff testified that she worked part-time at a restaurant doing food preparation from December 2008 until July 2010, although her attorney indicated that she may have started work in December 2006.  (Tr. 44-46.)  Plaintiff told the ALJ that she did not have a job and was currently receiving food stamps.  (Tr. 46.)

Plaintiff reported that she can sit for 30 to 60 minutes and stand for one to two hours. (Tr. 47-48.)  Plaintiff indicated that she can walk 50 feet before needing to rest.  (Tr. 48.)  Plaintiff testified to fatigue in general. (Tr. 63.)  Plaintiff indicated that she could not drive and had difficulty crouching down and bending at the hips and knees.  (Tr. 49.)  Plaintiff reported that she had an asthma condition, but testified that she had not been to the emergency room for asthma in over three years.  (Tr. 51-52.)  Plaintiff also reported that she had allergies and that she used an inhaler two times per day to reduce her symptoms (light sensitivity and headaches) in addition to a steroid treatment.  (Tr. 52-53, 64.)  Plaintiff reported that she required glasses to see.  (Tr. 52.)

Plaintiff indicated that she had pain in her arms and hands most of the time.  (Tr. 53.)  On a zero-to-ten pain scale, Plaintiff rated her arm and hand pain a nine.  (Tr. 53.)  Plaintiff reported that she experienced numbness in her hands and that she frequently dropped things.  (Tr. 53-54.)  Plaintiff testified being diagnosed with carpal tunnel syndrome and was prescribed braces for both of her wrists.  (Tr. 54.)  Plaintiff reported that her cousins assisted her with activities around the house at least one time per week, but that she was able to bathe and dress herself.  (Tr. 54-55.)

Plaintiff also testified that she had pain in her legs and feet, that her legs were frequently swollen, and that she attempted to elevate them every afternoon for at least one hour. (Tr. 56.) Plaintiff reported that she felt unstable while ambulating and had fallen a few times, however, her doctor had not prescribed a cane. (Tr. 57.) Plaintiff confirmed that she had surgery on her left knee within the past few years and that her doctor indicated a desire to totally replace that knee at some point in the future. (Tr. 58.) Plaintiff also indicated that she had heel spur surgery on her left foot in 2009. (Tr. 59.) Plaintiff reported that her feet still hurt "at least three or four days a week." (Tr. 59.)

Plaintiff testified that she had chest pain at least two to three days a week. (Tr. 60.) Plaintiff also reported having high cholesterol and high blood pressure. (Tr. 61.) Plaintiff reported that her high cholesterol was controlled with medication and that her high blood pressure had been controlled with medication until the last year. (Tr. 61.) Plaintiff reported a family history of heart-related issues. (Tr. 62-63.)

Plaintiff also indicated that she suffered from anxiety, although she reported that she did not seek counseling. (Tr. 65.) Plaintiff testified that she experienced anxiety attacks three times per week and that it was difficult to manage her anxiety while working part-time; however, Plaintiff indicated that she did not have difficulty working with the public in general, just with her supervisors. (Tr. 65-66.) Plaintiff reported that she had some problems with her memory and remembering dates, and that she misplaced things. (Tr. 58.) Plaintiff testified, however, that she was able to pay attention and concentrate on everything the ALJ said during the hearing. (Tr. 52.)

4

## 2. The Medical Expert's Testimony

The medical expert, Dr. Ashok Jilhewar, reviewed the file for impairments that lasted longer than one year and had more than a minimal effect on function as required by the Social Security regulations. (Tr. 67.) Dr. Jilhewar concluded that Plaintiff had "morbid obesity, degenerative joint disease of the left knee, degenerative joint disease. Must medium see [phonetic] [INAUDIBLE] metacarpal joint of left thumb . . . [h]ypertenion . . . And lastly, either bronchial asthma or chronic obstructive pulmonary disease . . . And one more. She has been labeled to have a non-serious impairment of restless leg syndrome." (Tr. 68.)

Dr. Jilhewar concluded that these impairments either individually or collectively did not equal or meet a listing. (Tr. 71.) Dr. Jilhewar further classified Plaintiff's residual functional capacity as:

> restricted, sedentary capacity, meaning able to lift and carry 10 pounds occasionally and frequently. I'm aware of the testimony that she could only -- she stated she can only carry five pounds, but the medical records do not document that. She can stand and walk half-an-hour at one time. Two hours in an eight-hour workday. She can sit up to eight hours in eight-hour workday. Regarding upper extremity limitations, she can use both hands only frequently, not continuously for feeling and manipulation. There are no limitations in the shoulder at all, at reaching -- or reaching in all directions. Regarding the postural limitations, she can do the stairs and ramps occasionally. The ladders are often and scaffolds never. Bending and stooping occasional; kneeling, crouching, and crawling never. Regarding the environmental limitations, she cannot work at the unprotected heights because of the degenerative joint disease of the left knee. And she needs to avoid concentrated exposure to the pulmonary irritants, as well as extreme cold, meaning temperatures below freezing or 30 degrees Fahrenheit. There are no further limitations. Now, I have not -- definitely not found any psychiatric impairment in this, as I say.

(Tr. 71-72.)

5

### 3. The Vocational Expert's Testimony

The ALJ solicited testimony from a vocational expert ("VE") to determine whether jobs would be available for someone with functional limitations approximating Plaintiff's. The ALJ asked about job availability for a hypothetical individual of Plaintiff's age, education, and work experience. The VE testified that the hypothetical individual could not perform any of Plaintiff's past work with those restrictions. (Tr. 78.) The VE testified that the hypothetical individual could, however, perform the following occupations at the unskilled, sedentary level: sorter of small objects, eyeglass assembler, and circuit board assembler. (*Id.*) The VE testified that all of these occupations are generally performed sitting at a bench. (Tr. 78-79.) The VE testified, however, that based on his 15 years of experience in job placement, job analyses and job descriptions, as long as the sit/stand option did not take someone away from their job or cause them to be off-task, all of the jobs listed would permit a sit/stand option. (Tr. 79.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act (the "Act"), disability insurance benefits and supplemental security income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (DIB); 20 C.F.R. § 416.905 (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

6

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1520, 416.920. "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, ALJ Donovan found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of December 29, 2007. (Tr. 26.) At step two, he found that Plaintiff had the following severe impairments: morbid obesity, degenerative joint disease of the left knee and metacarpal joint of the left thumb, hypertension, and bronchial asthma/chronic obstructive pulmonary disease. (*Id.*) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (Tr. 27.) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work except that Plaintiff can:

frequently use hand/arm controls, feel, finger, handle, reach, and balance; can occasionally use foot/leg controls, stoop, and reach overhead without lifting; can never climb ladders/ropes/scaffolds; can

7

> never crouch or crawl; can maintain concentration for short periods
> of time; can interact only occasionally with supervisors, co-workers,
> and general public; can respond frequently to changes in workplaces
> so long as procedures are ordinary, routine, and predictable; requires
> a 6-inch footstool and an at-will sit/stand option; and must avoid
> concentrated exposure to unprotected heights, pulmonary irritants,
> heat, cold, and uneven slippery surfaces.

(Tr. 27.)  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.

(Tr. 31.)   At step five, the ALJ found that sufficient jobs existed in the national economy for

someone of Plaintiff's age, education, work experience, and residual functional capacity.  (Tr. 31.)

The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act

from the alleged onset date through the date of his decision.  (Tr. 32.)

## III.  STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited: the Court "must affirm

the Commissioner's conclusions absent a determination that the Commissioner has failed to apply

the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation

marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks

omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed

even if the reviewing court would decide the matter differently and even if substantial evidence also

supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th

8

Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV. ANALYSIS

In this case, Plaintiff asserts that the ALJ erred (1) by failing to recognize all of Plaintiff's impairments as "severe" at step two of the sequential analysis; (2) by failing to consider the effects that Plaintiff's morbid obesity had on her other impairments; (3) by failing to give controlling weight to her treating physicians and by failing to give "good reasons" for discounting the opinions of those physicians; (4) by finding Plaintiff's statements to be "not credible" to the extent that they were inconsistent with the RFC determined by the ALJ; and (5) by failing to offer a proper hypothetical to the vocational expert that accurately portrayed Plaintiff's functional abilities. (Dkt. 12, Pl.'s Mot. Summ. J. at 1-5.)

9

### A. Severe Impairments

At step two, the ALJ determined that Plaintiff had five severe impairments: morbid obesity, degenerative joint disease of the left knee and metacarpal joint of the left thumb, hypertension, and bronchial asthma/chronic obstructive pulmonary disease.  (Tr. 26.)  The ALJ acknowledged that Plaintiff had other impairments, including restless leg syndrome and anxiety disorder, but he found them not to be severe.  (Tr. 27.)  Plaintiff contends that the ALJ improperly omitted bilateral carpal tunnel syndrome, chronic low back and hip pain with degenerative disc disease, bilateral plantar fasciitis and heel spurs, osteoarthritis of the left shoulder, a latex allergy, and anxiety with fatigue and memory problems. (Pl.'s Mot. Summ. J. at 1-4.)

Plaintiff fails to recognize that once step two is "cleared" by finding that some severe impairment exists, the ALJ must then consider a plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008).  "The fact that some of [a plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant."  *Id.*  Consequently, any alleged omissions from the list of severe impairments does not necessarily undermine the ALJ's decision. *See Anthony*, 266 Fed. App'x at 457; *Talos v. Comm'r of Soc. Sec.*, No. 11–13207, 2012 WL 1392156, at *8 (E.D. Mich. Mar. 26, 2012); *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  Said another way, any error in not recognizing an impairment as severe at step two is harmless as long as the ALJ finds at least one severe impairment, continues the sequential analysis, and ultimately addresses all of the claimant's impairments in determining his residual functional capacity.  *Ripen v. Comm'r of Soc. Sec.,* 198 F. App'x, 414, 415 (6th Cir. 2006).

The Court therefore considers whether the ALJ adequately addressed the omitted, alleged

"severe" impairments in the RFC assessment. As an initial matter, the Court finds it significant that Plaintiff did not identify left shoulder pain, restless leg syndrome, plantar fasciitis/heel spurs, latex allergy or anxiety disorder as a basis of disability in any of the disability reports that supported her application for disability benefits. (*See* Tr. 174, 208, 215.) The Court further notes that Plaintiff's arguments regarding these alleged, omitted "severe" impairments are cursory in nature. In most cases, Plaintiff makes a limited effort, pointing to non-specific parts of the record, to marshal the evidence and show how the ALJ failed to make a proper determination at step 2, or how the ALJ failed to account for her functional limitations in the RFC. For the reasons that follow, the Court concludes that the ALJ did not err.

### 1. Carpal tunnel syndrome

Plaintiff first claims that the ALJ erred by not including carpal tunnel syndrome as an alleged severe impairment. In support, Plaintiff identifies a consultative examination conducted by Dr. Kerstyn Zalesin on December 14, 2007. (Tr. 242-46.) Dr. Zalesin noted pain in Plaintiff's hands and wrists and occasional burning with heavy lifting. (Tr. 242.) Dr. Zalesin concluded that Plaintiff "would have difficulty with prolonged standing or lifting as a result of her multiple joint concerns and degenerative disease." (Tr. 245.) Nerve conduction studies were done on October 13, 2009, which indicated mild electrophysiology on both sides. (Tr. 357.) However, the report indicated that based on Plaintiff's history and clinical examination, the finding may not account for her thumb and wrist pain. (*Id.*) Plaintiff also relies on findings from the Mid Michigan Bone and Joint Center from November 24, 2009, where a clinical exam revealed positive tinel's and phalen's tests, with bilateral positive thenar atrophy signs on the right side. (Tr. 372-73.) Test results confirmed bilateral carpal tunnel syndrome. (Tr. 373.) A positive tinel's and phalen's were also noted on November 11, 2010.

11

(Tr. 516.)

The ALJ's RFC provides that Plaintiff can "frequently use hand/arm controls, feel, finger, handle, reach, and balance[.]"  (Tr. 27.)  The impartial medical expert acknowledged Plaintiff's carpal tunnel syndrome diagnosis, but testified that it was non-severe given that the record contained no evidence of follow-up treatment beyond a prescription for night-splints, and Plaintiff's testimony that she did not undergo carpal tunnel release surgery.  (Tr. 70.)  Dr. Zalesin further concluded that Plaintiff had intact grip strength and that she could perform such fine motor actions as picking up a coin and buttoning clothing.  (Tr. 243.)  This was confirmed at the hearing when Plaintiff testified that she could pick up small items such as a nickel, paper clip and a rubber band.  (Tr. 51.)  Moreover, an October 2009 treatment note from Dr. Meihui Ma noted a normal EMG/nerve conduction study of Plaintiff's arms, describing Plaintiff's carpal tunnel condition as "mild."  (Tr. 357.)

Based on the foregoing, the Court concludes that the ALJ's RFC accounted for this impairment and he did not err.

### 2. *Left shoulder pain*

Plaintiff alleges left shoulder pain and osteoarthritis of the shoulder joint.  (Tr. 514-16.)  Plaintiff underwent surgery on October 25, 2011 to repair a left shoulder tear and anterior labral tear.  (Dkt. 12, Pl.'s Mot. Summ. J., Surgical Report, Ex. 1.)  Plaintiff argues that this "new" evidence confirms the nature of Plaintiff's pre-existing, severe left shoulder pathology.  (*Id.*)

The ALJ concluded that Plaintiff could "occasionally . . . reach overhead without lifting[.]"  (Tr. 27.)  Therefore, the ALJ limited Plaintiff's use of her shoulders in the RFC; however, Plaintiff argues that the RFC does not go far enough.  Importantly, the only evaluation during the relevant

12

period that indicated Plaintiff had a shoulder impairment also indicated that she had good range of motion in her left shoulder.  (*See* Tr. 516.)

Plaintiff attaches the October 2011 surgical report as an exhibit to her brief in support of her motion for summary judgment.  (Dkt. 12, Pl.'s Mot. Summ. J., Surgical Report, Ex. 1.)  She admits this is "new" evidence as the ALJ issued his decision on January 4, 2011. (Tr. 33.)  In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ.  *See, e.g., Cotton v. Sullivan*, 2 F.3d 692 (6th Cir.1993); *Casey v. Sec'y*, 987 F.2d 1230, 1233 (6th Cir.1993); *Wyatt v. Sec'y*, 974 F.2d 680, 685 (6th Cir.1993).  Moreover, under 20 C.F.R. § 404.970(b), "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."  Here, Plaintiff's October 2011 evidence does not relate to the period on or before the January 2011 hearing decision. Moreover, Plaintiff does not seek a sentence six remand under 42 U.S.C. § 405(g), and she has therefore forfeited that claim.  *See Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that [plaintiff] appears to raise in her brief on appeal.").

The Court concludes that the ALJ did not err by not including left shoulder pain as a severe impairment, or by not including a limitation for left shoulder pain in the RFC assessment beyond what was already included.

### 3. Chronic back, hip and leg pain

Plaintiff alleges that the record supports her complaints of chronic back, hip, and leg pain, which includes her restless leg syndrome since February 19, 2007. (Pl.'s Mot. Summ. J. at 2.) With respect to Plaintiff's musculoskeletal impairments, the ALJ concluded:

> The claimant complained of knee arthritis in January 2008, and her doctor prescribed Tylenol #3 (Exhibit 4F/9). In March 2008, x-rays of the left knee revealed mild degenerative changes with suspected joint effusion (Exhibit 6F/10). Her doctor recommended that she continue taking Tylenol #3 with over the counter ibuprofen (Exhibit 13F/16). At an appointment in April 2008, the claimant reported no changes, and indicated that her pain medication was helpful (Exhibit 4F/8). An MRI of the left knee from November 2008 showed mild to moderate degenerative changes, moderate joint effusion along the lateral recess of the patella femoral joint, and a "very tiny" tear of the posterior horn of the medial meniscus (Exhibit 18F/19). The claimant underwent a left knee arthroscopy surgery on April 1, 2009 (Exhibit 17F/8). At a follow up appointment in May 2009, the claimant's range of motion was increased, and muscle strength, physical examination, and pain were all improved (Exhibit 17F/11). Although the claimant complained of pain on September 8, 2010, her physician found no reduction in range of motion, and no instability, dislocation, or laxity (Exhibit 19F/51).
>
>             *       *       *
>
> There is little objective medical evidence supporting the claimant's complaints of back and leg impairments. In 2007, the claimant complained of intermittent bilateral pain, burning, and paresthesia from her back through her hips, buttocks, and down to her knees; however, an NCV study was normal and showed no electrodiagnostic evidence of radiculopathy or peripheral neuropathy (Exhibit 16F/1). On December 13, 2007, the claimant had a physical examination, and made no complaints regarding her alleged musculoskeletal impairments (Exhibit 1F/4). The claimant's physician did not note any back or knee problems (*Id.*). On multiple occasions, the claimant's physician found no reduction in range of motion, and no pain, crepitation, or contracture (Exhibit 19F/32, 45, 51). An MRI of the cervical spine from April 2008 was unremarkable (Exhibit 6F/6). An MRI of the lumbar spine from June 2008 showed only mild degenerative changes of the lumbar spine, with no herniation or stenosis (Exhibit 6F/1).

14

(Tr. 28-29.)  In addition, the ALJ gave weight to the testimony of Dr. Jilhewar because he was familiar with the Social Security disability program, and his findings were consistent with the objective medical evidence.  (Tr. 30.)  Moreover, The ALJ noted that Dr. Jilhewar had the benefit of reviewing the totality of the medical evidence and had the chance to listen to Plaintiff's testimony.  (*Id.*)  Although Plaintiff complained of low back pain, Dr. Jilhewar testified that there was no documentation of any low back impairment.  (Tr. 30, 69-70.)

The Court has reviewed the record evidence that Plaintiff cites in her motion for summary judgment.  (*See* Pl's Mot. Summ. J. at 2-3.)  The only evidence that Plaintiff cites that is not already specifically addressed within the ALJ's narrative is Exhibit 2F, a consultative examination conducted for the Disability Determination Services by Dr. Kerstyn Zalesin.   (Tr. 242-46.)  In it, Plaintiff complained of arthritic conditions in her hands and back.  (Tr. 242.)  Dr. Zalesin noted the following regarding Plaintiff's musculoskeletal examination:

> There is no evidence of joint laxity or effusion. There is mild crepitance. Grip strength remains intact. Dexterity and coordination were unimpaired. Jamar dynomometer testing shows compression of 30 pounds on the right, 24 pounds on the left. There is mild synovial thickening at the left knee. The patient can pick up a coin, button clothing, and open a door. She had para spinous muscular tenderness of the lumbar spine in her back with mild loss of lumbar lordosis. There was no kyphosis or scoliosis. The patient has no difficulty getting on and off the examination table, mild difficulty heel and toe walking, mild difficulty squatting and arising, and she deferred hopping.

(Tr. 243.)  In addition, Dr. Zalesin noted that Plaintiff walked with a normal, but small-stepped, gait without the use of an assisted device.  (Tr. 244.)  Her cranial nerves were intact and her motor strength was normal.  (*Id.*)  Plaintiff's cervical spine and lumbar spine range of motion testing was all normal.  (*Id.*)  Dr. Zalesin concluded that Plaintiff would have difficulty with prolonged standing

or lifting, however, "in spite of her symptoms, the patient is able to maintain gainful employment." (Tr. 245.) Based on the foregoing, the Court concludes that the ALJ reasonably accommodated for any potential difficulty with prolonged standing and lifting in the RFC by including an at-will sit/stand option and by restricting Plaintiff to overhead reaching without lifting. (Tr. 27.)

### 4. Plantar fasciitis and heel spurs

Plaintiff claims that the ALJ erred by not listing her plantar fasciitis and heel spurs as severe impairments. (Pl.'s Mot. Summ. J. at 3.) Plaintiff claims that she complained of bilateral heel spurs as far back as May 28, 2008. (Tr. 259-64.) On June 28, 2008, arthritic changes to the first metatarsal head and a plantar spur were reported. (Tr. 270.) On October 31, 2008, Plaintiff underwent a plantar fasciitis surgery of the right foot. (Tr. 353.) When Dr. Zalesin was questioned about Plaintiff's plantar fasciitis, she indicated that the medical evidence showed that Plaintiff's condition resolved with surgery. (Tr. 69.) The Court therefore concludes that the ALJ did not err by not including plantar fascitis and heel spurs as severe impairments, or a limitation for plantar fasciitis and heel spurs in the RFC assessment beyond what was already included.

### 5. Anxiety and fatigue

Plaintiff complains that the ALJ discounted her complaints of anxiety and fatigue because she was treating with a family doctor rather than a specialist. (Pl.'s Mot. Summ. J. at 3.) While there are brief references to "anxiety" in the record, the ALJ accurately noted that Plaintiff never received any counseling or psychiatric treatment for her alleged anxiety disorder. (Tr. 27.) Further, the record does not contain any medical evidence that these impairments significantly affected Plaintiff's ability to work. In fact, Dr. Newhouse explicitly determined that Plaintiff's anxiety disorder was "not severe." (Tr. 283, 284.) Moreover, Dr. Jilhewar testified that Plaintiff had no

16

psychiatric impairment at all. (Tr. 72.) As such, the ALJ did not err in not including anxiety or fatigue as severe impairments, or a limitation for anxiety or fatigue in the RFC assessment beyond what was already included.

### 6. Latex allergy

Plaintiff also alleges that the ALJ failed to recognize her latex allergy as a serious impairment. (Pl.'s Mot. Summ. J. at 3-4.) Beyond Plaintiff's diagnoses, the only medical evidence addressing the latex allergy suggests that it was not severe. An Urgent Care form included two latex screening questions, the first asked if Plaintiff had ever experienced swelling, itching, or hives on her lips or around her mouth after blowing up a balloon. (Tr. 320.) The second asked if Plaintiff had ever experienced swelling, itching, hives, runny nose, eye irritation, tearing, wheezing, drowsiness, or asthma after a dental or medical examination. (*Id.*) Plaintiff answered "No" to each question. (*Id.*) On this record, the Court concludes that the ALJ did not err in not including latex allergy as a severe impairment, or a limitation for latex allergy in the RFC assessment.

### B. Obesity

Plaintiff alleges that the ALJ committed reversible error by failing to consider the effects of her obesity on her other impairments or its impact on her RFC. (Pl.'s Mot. Summ. J. at 4.) The only argument that Plaintiff makes in support, however, is that she had to terminate three stress tests prematurely because of exhaustion or an overly hypertensive response to exercise. (*Id.* (citing Tr. 13F, 14F, 18F.)) The Commissioner argues that the ALJ did not err because he explicitly considered Plaintiff's obesity in his findings of fact and relied on expert physician reports that specifically mentioned Plaintiff's obesity. (Def.'s Mot. Summ. J. at 12.)

The Sixth Circuit has explained that "obesity, in combination with other impairments, 'may'

17

increase the severity of the other limitations." *Bledsoe v. Barnhard*, 165 F. App'x 408, 412 (6th Cir. 2006) (quoting S.S.R. 02-01p). S.S.R. 02-01p, however, does not mandate a particular mode of analysis for an obese claimant. *Id.* at 412. An ALJ must explain his conclusions, if any, caused by obesity on a claimant's functional abilities. S.S.R. 02-01p, 2002 WL 34686281, at *7. The Sixth Circuit provides that there is no violation of S.S.R. 02-01p when an ALJ relies on a physician's opinion that accounts for a claimant's obesity in determining his RFC, thereby incorporating "the effect that obesity has on the claimant's ability to work into the RFC he constructed." *Coldiron v. Comm'r*, 391 F. App'x 435, 443 (6th Cir. 2010); *see also Bledsoe*, 165 F. App'x at 142.

As mentioned, Plaintiff identifies three failed stress tests as evidence of the limiting effects of her obesity that she contends the ALJ failed to consider. However, no physician ever linked Plaintiff's obesity with her performance on the stress tests. Regardless of the cause for Plaintiff's inability to complete these tests, the ALJ restricted Plaintiff to sedentary work, requiring lifting no more than 10 pounds at a time and occasionally lifting such items as docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a). Moreover, Dr. Jilhewar, the indepedent medical expert, testified that the limitation to sedentary work was appropriate in light of Plaintiff's stress test results (Tr. 73), concluding that Plaintiff was morbidly obese (Tr. 68). Additionally, the ALJ cited and relied on medical records and opinions that noted Plaintiff's weight and obesity. As explained, Dr. Jilhewar noted Plaintiff's morbid obesity. (Tr. 68.) The ALJ assigned Dr. Jilhewar's testimony "great weight." (Tr. 30.) Also, Dr. Zalesin, who conducted a consultative examination, noted Plaintiff's weight of 229 pounds (Tr. 243), yet concluded that Plaintiff was capable of maintaining gainful employment (Tr. 245). Similarly, Dr. Gray noted Plaintiff's obesity and explained that it "negatively impacts" her "underlying conditions." (Tr. 300.) Yet, Dr. Gray found that Plaintiff

retained the ability to lift up to 20 pounds occasionally, and 10 pounds frequently (Tr. 299), meaning Plaintiff could perform a light range of work, *see* C.F.R. § 404.1567(b). The ALJ gave Dr. Gary's opinion "significant weight." (Tr. 30.) Based on the foregoing, the Court concludes that the ALJ sufficiently considered Plaintiff's obesity. *See Coldiron*, 391 F. App'x at 443; *Bledsoe*, 165 F. App'x at 142.

### C. Treating Physician

Plaintiff argues that the ALJ gave great weight to Dr. Jilhewar, did not give controlling weight to her treating physicians, and did not articulate good reasons for not giving them controlling weight as required by 20 C.F.R. § 404.1527(c)(2). (Pl.'s Mot. Summ. J. at 4.) The Court concludes that Plaintiff has failed to fully develop her argument on this point. Plaintiff's motion merely states that the ALJ did not adhere to the treating physician rule, but Plaintiff fails to identify what treating physician's opinions were overlooked, or how she was prejudiced as a result. When Plaintiff's arguments are raised in only a perfunctory manner, they are forfeited. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) ("[I]ssues which are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and citation omitted)); *Baldwin v. Astrue*, No. 08-395, 2009 WL 4571850, at *3 (E.D. Ky. Dec.1, 2009) ("The Plaintiff is represented by counsel, and the Court is not required to formulate arguments on the Plaintiff's behalf.").

Indeed, the Court's review of the record reveals no treating physician opinions at all. And, significantly, Plaintiff does not identify any in her motion. The Sixth Circuit has held that the treating source rule does not apply unless there is a "genuine assertion by the treating physician of an opinion involving the claimant's 'symptoms, diagnosis, and prognosis.'" *Mitchell v. Comm'r of*

19

*Soc. Sec.*, 330 F. App'x, 563, 569 (6th Cir. 2009); *see* C.F.R. § 404.1527(a)(2) (defining medical

opinions as "statements from physicians and psychologists or other acceptable medical sources that

reflect judgments about the nature and severity of your impairment(s), including your symptoms,

diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental

restrictions.").  As explained above, all of the physicians who assessed Plaintiff agreed that she

remained capable of undertaking gainful employment at the sedentary or light level.  (*See* Tr. 71-72,

245, 299.)  Moreover, while not always the most desirable route, the regulations permit an ALJ to

give the greatest weight to the opinion of a non-examining medical source.  *See* 20 C.F.R.

404.1527(f)(1); *see also* S.S.R. 96-6p, 1996 374180, at *1; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d

640, 651 (6th Cir. 2006); *Inman v. Sec'y of Health & Hum. Servs.*, No. 94-3635, 1995 WL 351277

(6th Cir. June 9, 1995).  This is particularly true in a case where there is no readily identifiable

treating physician opinion to discount or reject.  For all of these reasons, Plaintiff's treating

physician argument fails.

### D.  Credibility

Plaintiff argues that the ALJ's evaluation of her credibility was not well-reasoned and was

not supported by substantial evidence.  (Pl.'s Mot. Summ. J. at 5.)  Plaintiff claims that the ALJ

discounted her credibility because she "attempts to lead a normal life," but does not explain how

these activities are consistent with the ability to perform full-time competitive work.  (*Id.*)

A court is to accord an "ALJ's determinations of credibility great weight and deference

particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's

demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  An

ALJ, however, must not reject a claimant's "statements about the intensity and persistence of [his]

pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* S.S.R. 96-7p, 1996 WL 374186.  In fact, the regulations provide a non-exhaustive list of other considerations that should inform an ALJ's credibility assessment: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received for relief of pain or other symptoms; (6) any measures the claimant used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).  Although an ALJ need not explicitly discuss every factor, *Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005), an ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  S.S.R. 96-7p, 1996 WL 374186, at *2.

Here, the ALJ gave detailed reasons for discounting Plaintiff's credibility.  First, throughout the ALJ's discussion of the medical evidence, he pointed out inconsistencies between the evidence and Plaintiff's reported, disabling limitations.  (Tr. 28-30.)  The Court has discussed these inconsistencies in Part A above.  Second, the ALJ noted that two physicians of record questioned Plaintiff's veracity.  Dr. Kerstyn Zalesin opined that Plaintiff's effort was "questionable" on the test and throughout her examination.  (Tr. 29, 31, 245.)  And, Dr. Gray noted that Plaintiff "appear[ed]

partially credible" adding that Plaintiff's descriptions of her limitations "seem[ed] exaggerated relative to the findings in [the medical evidence of record]." (Tr. 303.) In addition, the ALJ catalogued Plaintiff's robust daily activities as inconsistent with someone complaining of such disabling symptoms and limitations. (Tr. 30.) The ALJ specifically noted that Plaintiff lived alone, did her own housework, ran errands, and was able to handle all of her own personal care activities with relatively little difficulty. (*Id.*) Finally, the ALJ noted that Plaintiff had a good work history, including doing food preparation at a restaurant for several years after her alleged onset date. (*Id.*) The ALJ stated: "Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (Tr. 30-31.)

Plaintiff essentially asks the Court to re-weigh the evidence; however, this Court's scope of review is limited, and the Court will not disturb the ALJ's credibility determination absent a compelling reason. *Sims v. Comm'r of Soc. Sec*, 406 F. App'x 977, 981 (6th Cir. 2011). The Court finds no such compelling reason here.

### E.  Hypothetical Question

The Sixth Circuit states that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Farley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal citations omitted); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004). Plaintiff asserts that the ALJ's hypotheticals to the VE were improper because they did not accurately describe Plaintiff's RFC. (Pl.'s Mot. Summ. J. at 5.) Because the Court has previously determined that the ALJ did not err

22

in his RFC determination and the hypothetical tracked the RFC, this claim of error fails for the reasons stated.

## V. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 12) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 17) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## VI. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be

filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).


s/Laurie J. Michelson_____
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  July 1, 2013


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 1, 2013.


s/Jane Johnson_____
Deputy Clerk

24